UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSERVATION CONGRESS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES FOREST SERVICE,<br><br>　　　　Defendant. | No. 2:18-cv-01694-JAM-DMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On June 9, 2018, Plaintiff Conservation Congress filed a complaint against Defendant United States Forest Service ("the Forest Service"), alleging that the Service violated the Administrative Procedures Act, National Environmental Policy Act, and the National Forest Management Act. See Compl., ECF No. 1. The parties filed cross-motions for summary judgment and reply briefs. See Pl.'s Mot. Summ. J., ECF No. 19; Def.'s Mot. Summ. J., ECF No. 33; Pl.'s Reply, ECF No. 34; Def.'s Reply, ECF No. 35. For the reasons set forth below, the Court DENIES Conservation Congress's Motion for Summary Judgment and GRANTS the Forest Service's Motion for Summary Judgment.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for March 19, 2019.

1

I. FACTUAL AND PROCEDURAL BACKGROUND

A. The Lassen 15 Project

The Lassen 15 Restoration Project ("the Lassen 15 Project") is planned for the Lassen Creek area of the Modoc National Forest. LC15_000001. It is comprised of 8,004 acres of treatment areas within the approximately 25,000 acres of analysis area. Id. The Modoc National Forest Land and Resource Management Plan, amended by the Sierra Nevada Forest Plan Amendment, contains the standards and guidelines with which the Lassen 15 Project must comply. Id.

The primary objective of the Lassen 15 Project is to address forest health concerns, including the risk of insect infestation, disease, and wildfire in the dense, homogeneous conifer forest. LC15_000002. The Lassen 15 Project calls for 7,002 acres of vegetation treatments, including thinning and fuel break treatments; prescribed fire of 6,146 acres to be implemented over 10 to 15 years; and several miles of temporary roads, to be decommissioned after use. LC15_000003. The Project also involves tree planting of 90 acres at the rate of 200 trees per acre and stream restoration to restore aquatic conditions. LC15_000035. Implementation of the Lassen 15 Project was scheduled for 2018 to 2024. LC15_000011.

In the no action alternative, "no harvesting, tree planting, or other restoration actions" would occur; however, "[o]ngoing management practices such as limited road maintenance, fire suppression, and livestock grazing would continue[.]" LC15_000041.

After considering ten factors identified in 40 C.F.R.

§ 1508.27(b), Forest Supervisor Amanda McAdams issued a Finding of No Significant Impact ("FONSI") for the Lassen 15 Project on May 21, 2018. LC15_000001. The FONSI followed a revised final Environmental Assessment, made available in August 2017, LC15_000005, in which the Forest Service weighed the impacts of implementing the Project against a no action alternative. LC15_000001. Conservation Congress was one of three objectors to the initial final Environmental Assessment. LC15_000005.

B. The Joseph Creek Project

The Joseph Creek Forest Health Project ("the Joseph Creek Project") is planned within the Warner Mountain Ranger District of the Modoc National Forest. JC_000011. It is comprised of approximately 2,800 acres. Id. Like the Lassen 15 Project, the Joseph Creek Project is governed by the standards and regulations in the Modoc National Forest Land and Resource Management Plan, amended by the Sierra Nevada Forest Plan Amendment. Id.

The Joseph Creek Project seeks to remedy the above average stocking levels in the area and the tree mortality attributed to bark beetles, Heterobasidion root disease, and dwarf mistletoe. Id. The Project will remove dead trees and thin areas of live trees to meet desired stocking levels. JC_000012-13.

The Joseph Creek Project was approved pursuant to a decision memorandum signed by Forest Supervisor Amanda McAdams on March 16, 2018. JC_000019. The Forest Service seeks to carry out the Joseph Creek Project pursuant to the authority granted in Section 8204 of the Agricultural Act of 2014, Pub. L. No. 113-79. JC_002512.

///

## II. OPINION

### A. Legal Standard

#### 1. The National Environmental Policy Act

The National Environmental Policy Act ("NEPA") "is a procedural statute that requires the federal government to carefully consider the impacts of and alternatives to major environmental decisions." Native Ecosystems Council v. Weldon, 697 F.3d 1043, 1051–52 (9th Cir. 2012) (citing 42 U.S.C. §§ 4321, 4331). NEPA does not mandate specific results, but instead requires agencies take a "hard look" at the environmental consequences of their actions and disseminate relevant environmental information to the public. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). "NEPA is concerned with process alone and merely prohibits uninformed—rather than unwise—agency action." Turtle Island Restoration Network v. United States Dep't of Commerce, 878 F.3d 725, 730 (9th Cir. 2017) (internal quotation marks omitted). Judicial review of agency decision-making is "at its most deferential" when reviewing scientific judgments and technical analyses within the agency's expertise. N. Plains Res. Council, Inc. v. Surface Transp. Bd., 668 F.3d 1067, 1075 (9th Cir. 2011) (quoting Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 103 (1983)).

#### 2. Administrative Procedure Act

The Court reviews an agency's NEPA compliance under the Administrative Procedure Act ("the APA"). Churchill Cty. v. Norton, 276 F.3d 1060, 1071 (9th Cir. 2001), opinion amended on denial of reh'g, 282 F.3d 1055 (9th Cir. 2002). The APA

"empowers federal courts to 'hold unlawful and set aside agency action, findings, and conclusions' if they fail to conform with any of six specified standards." Marsh v. Oregon Nat. Res. Council, 490 U.S. 360, 375 (1989) (quoting 5 U.S.C. § 706). Courts set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996). This "highly deferential" review of the administrative record affirms an agency action if there is a rational basis for the decision. Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv., 475 F.3d 1136, 1140 (9th Cir. 2007). The Court may not substitute its judgment for that of the agency. Id.

### 3. The National Forest Management Act

The National Forest Management Act ("the NFMA") "directs the Forest Service to develop a comprehensive land and resource management plan ('Forest Plan') for each unit in the national forest system." Great Old Broads for Wilderness v. Kimbell, 709 F.3d 836, 849-50 (9th Cir. 2013) (citing 16 U.S.C. § 1604(a)). Forest Plans "manage forest resources by balancing the consideration of environmental and economic factors," furthering the NFMA's purpose of "provid[ing] for diversity of plant and animal communities" in forest management. Native Ecosystems Council v. Weldon, 697 F.3d 1043, 1056 (9th Cir. 2012); 16

U.S.C. § 1604(g)(3)(B). After the Forest Service adopts a Forest Plan, the "NFMA prohibits any site-specific activities that are inconsistent with the Forest Plan." Lands Council v. Powell, 395 F.3d 1019, 1033 (9th Cir. 2005). Courts accord substantial deference to the Forest Service's interpretation and implementation of its Forest Plan. Weldon, 697 F.3d at 1056.

B. Evidentiary Objections

"In general, a court reviewing agency action under the APA must limit its review to the administrative record." San Luis & Delta-Mendota Water Auth. v. Locke, 776 F.3d 971, 992 (9th Cir. 2014). There are three narrow exceptions to this rule. Id. Reviewing courts "may consider extra-record evidence where admission of that evidence (1) is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) is necessary to determine whether the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." Id. at 992-93 (internal quotation marks omitted).

Conservation Congress has objected to the Forest Service's inclusion of a declaration from Forestry Technician Traci Silva. See Silva Decl., ECF No. 33-1. The Forest Service submitted this declaration to explain the difference and distinction between the Lassen 15 Project and the Joseph Creek Project. See Def.'s Mem. at 13 n.2. Clarification regarding the nature of Conservation Congress's claims renders this declaration unnecessary. See Def.'s Reply at 3-4. The Court will not

consider the Silva Declaration or other materials outside of the administrative record.

C. Analysis

1. Conservation Congress Has Abandoned Three Claims

Conservation Congress's Complaint lists seven claims. The Forest Service argues in its Motion for Summary Judgment that Conservation Congress has abandoned its second, third, and fourth claims. Those claims alleged that the Forest Service violated NEPA, the NFMA, and the APA by failing to take a hard look at the environmental impacts of the Lassen 15 Restoration Project (second claim); failing to adequately analyze and disclose the mitigation measures for the Lassen 15 Restoration Project (third claim); and failing to comply with the Sierra Nevada National Forest Plan Amendment for American (Pine) Marten (fourth claim). Conservation Congress does not present any arguments on or acknowledgements of these claims in its summary judgment briefing. It also fails to address the Forest Service's argument that it has abandoned the three claims. The Court finds that Conservation Congress's second, third, and fourth claims have been abandoned and summary judgment on these claims in favor of the Forest Service is granted. See Native Ecosystems Council v. Weldon, 697 F.3d 1043, 1050 (9th Cir. 2012).

Conservation Congress's four remaining claims allege that the Forest Service violated NEPA and the APA: (1) by failing to adequately analyze and disclose the cumulative effects of the Lassen 15 Restoration Project (first claim); (2) by using a Categorical Exclusion where extraordinary circumstances required

preparation of an Environmental Assessment (fifth claim); (3) by failing to adequately or accurately evaluate and disclose the cumulative effects of the Joseph Creek Project in relation to other projects, including the adjacent Lassen 15 Project (sixth claim); and (4) by violating the NFMA Standards and Guidelines for Minimum Proportions of Seral Stages and for Average Snag Densities (seventh claim). Compl. at 10-20.

    2.    <u>First Claim: Cumulative Effects of Grazing on the Lassen 15 Project</u>

Conservation Congress's first claim asserts that the Forest Service violated NEPA by failing to take a hard look at the baseline and cumulative impacts of grazing on the Lassen 15 Project. Compl. at 10-12. Conservation Congress argues that the Forest Service did not "provide a meaningful description of the baseline through past and ongoing impacts of cattle grazing in the project area." Opp'n Mem. at 13.

This argument lacks merit. The Forest Service adequately evaluated the cumulative effects of grazing in the Lassen 15 Project area. For example, the Environmental Assessment discusses how free-range cattle and sheep began grazing in the area in the late 1800s. LC15_000080. It discusses how seasonal grazing in the area is on a rotation system from May to September and notes that most of the area is subject to light livestock use and is in satisfactory condition. LC15_000124. While some of the existing grazing is moderate or heavy in key riparian areas, the Forest Service found that the Lassen 15 Project would not contribute to the problem. <u>Id.</u> Rather, the Environmental Assessment anticipates that the Project may reduce

the number of cattle in riparian areas by improving grazing distribution patterns in the uplands. LC15_000163-64. Although the present grazing activities could have adverse effects on the Lassen 15 Project's newly planted conifer seedlings, the Environmental Assessment finds these impacts will be mitigated by the planting in areas that have low forage use for cattle. LC15_000066.

Outside of the Environmental Assessment itself, the Forest Service reviewed the impact of grazing in the Revised Range Resource Specialist Report for Lassen 15 Restoration Project, LC15_001316-41, and in the reports considering the impact of the Project on aquatic species, LC15_000872; fuels, LC15_000988, LC15_001017-18; heritage, LC15_001132; hydrology, LC15_001193, LC15_001196; roads, LC15_001430; soils, LC15_001553; and wildlife, LC15_001595-001603. The Ninth Circuit has found similar grazing analysis to be sufficient for an Environmental Impact Statement, which requires more stringent analysis. See League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv., 549 F.3d 1211, 1220 (9th Cir. 2008). The Forest Service's assessment of the cumulative effects of grazing on the Lassen 15 Project fully satisfies NEPA's "hard look" requirement. Cf. WildEarth Guardians v. Provencio, 923 F.3d 655 (9th Cir. 2019) ("[A]lthough Plaintiffs disagree with the EAs' factual conclusions, the Forest Service nonetheless considered the issues, gave them the requisite 'hard look,' and thus fulfilled their NEPA obligations.").

Many of Conservation Congress's arguments focus on the negative impacts of preexisting grazing activity on riparian

areas, and what it views to be insufficient baseline information. See Opp'n Mem. at 14-15. The Forest Service identifies creeks that have been impacted by grazing as part of the existing conditions baseline. LC15_001185, LC15_001193. Conservation Congress seeks a level of specificity and detail that statute and regulations do not require.

Some of the detail Conservation Congress seeks pertains to future conditions and grazing patterns. It takes issue with the Forest Service's assessment that improving grazing distribution patterns in the uplands would potentially decrease grazing in riparian areas, LC15_000163-64, while simultaneously noting that livestock have an affinity for meadows and streams, LC15_000097. These statements are not inherently contradictory. Rather, the Forest Service has provided information about the possible consequences of future actions, without wading into the murky waters of speculation. NEPA does not require the Forest Service become an oracle, predicting exactly which variable outcome will flow from its proposed action.

The Forest Service has elucidated the possible impacts of the Lassen 15 Project, in conjunction with the cumulative effects of grazing, with a sufficient degree of detail. The Lassen 15 Project Environmental Assessment is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2). The Court grants summary judgment in favor of the Forest Service and against Conservation Congress on Conservation Congress's first claim.

///

///

### 3. Fifth Claim: Extraordinary Circumstances and the Joseph Creek Project's Categorical Exclusion

Conservation Congress's fifth claim asserts that the Forest Service violated NEPA by failing to consider extraordinary circumstances that preclude the use of categorical exclusion for the Joseph Creek project. Compl. at 16–17. The main issue raised here is whether "extraordinary circumstances review," required for categorical exclusion under NEPA regulations, applies to categorical exclusions permitted by the Health Forest Restoration Act, 16 U.S.C. § 6591 et seq.

Five years ago, Congress amended the Healthy Forests Restoration Act of 2003 to add a new type of categorical exclusion for projects that address qualifying insect and disease infestations on National Forest System lands. 16 U.S.C. § 6591a, et al. (hereinafter, "Farm Bill Amendment"). This statutory categorical exclusion contains different requirements and limitations from the categorical exclusion contained in NEPA's implementing regulations. Compare 16 U.S.C. § 6591b with 40 C.F.R. § 1508.4. To claim categorical exclusion under NEPA's regulations, the agency must "provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. Conservation Congress argues that this requirement similarly applies to categorical exclusion under the Health Forest Restoration Act.

The parties provided the Court with prior cases on this issue that reached different conclusions. See Native Ecosystem Council v. Marten, No. 17-153-M-DWM, 2018 WL 6046472 (D. Mont.

11

Nov. 19, 2018); Greater Hells Canyon Council v. Stein, No. 2:17-CV-00843-SU, 2018 WL 3966289, at *8 (D. Or. June 11, 2018), report and recommendation adopted, No. 2:17-CV-00843-SU, 2018 WL 3964801 (D. Or. Aug. 17, 2018); Ctr. for Biological Diversity v. Ilano, 261 F. Supp. 3d 1063, 1068-69 (E.D. Cal. 2017). After reviewing these nonbinding opinions, the Court finds that Stein, and Marten which adopted Stein's reasoning, provide a more thorough and better reasoned analysis than the assumption in Ilano. See Ilano, 261 F. Supp. 3d at 1069 ("[T]his ruling will assume for purposes of analysis that [extraordinary circumstances] review was indeed required").

Stein reviewed the plain language of the Farm Bill Amendment and NEPA's implementing regulations. 2018 WL 3966289, at *8 (noting the Supreme Court's direction to "ordinarily resist reading words or elements into a statute that do not appear on its face."). The Farm Bill Amendment does not mention extraordinary circumstances review, while NEPA regulations limit extraordinary circumstances review to "procedures under this section" of the Code of Federal Regulations. Compare 16 U.S.C. § 6591b with 40 C.F.R. § 1508.4. The Farm Bill Amendment provides conditions for qualifying projects, § 6591b(b); limitations, § 6591b(c); and exclusions, § 6591b(d). These subsections do not list extraordinary circumstances review as a necessary condition of or limitation for categorical exclusion. Conversely, other sections of the Healthy Forests Restoration Act expressly state a requirement for "extraordinary circumstances procedures" in order for an agency action to qualify for categorical exclusion. 16 U.S.C. § 6554(d). Had

12

Congress intended to impose an extraordinary circumstances requirement on statutory categorical exclusion, presumably the requirement would have been expressly stated as it is in other parts of the Health Forests Restoration Act. See Sandoz Inc. v. Amgen Inc., 137 S. Ct. 1664, 1677 (2017).

Accordingly, the Court agrees with the Forest Service's interpretation of section 6591b statutory categorical exclusion. The Forest Service was not required to perform extraordinary circumstances review for a qualifying project under section 6591b. The Court grants summary judgment in favor of the Forest Service and against Conservation Congress on Conservation Congress's fifth claim.

### 4. Sixth Claim: Cumulative Effects of the Joseph Creek Project

Conservation Congress's sixth claim alleges that the Forest Service violated NEPA by failing to evaluate and disclose the cumulative effects of the Joseph Creek Project in relation to the Lassen 15 Project. Compl. at 17-18.

The scope of an environmental impact assessment requires an agency consider "direct," "indirect," and "cumulative" impacts. 40 C.F.R. § 1508.25. "By its plain language, however, this regulation applies only to environmental impact statements." Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085, 1096-97 (9th Cir. 2013). The Ninth Circuit has determined that "where a proposed action fits within a categorical exclusion, full NEPA analysis is not required." Id. at 1097 (finding that "application of section 1508.25's requirements to categorical exclusions is inconsistent with the efficiencies that the

abbreviated categorical exclusion process provides.").

Here, the Forest Service issued the Joseph Creek Project categorical exclusion pursuant to the Farm Bill Amendment, 16 U.S.C. § 6591b, rather than NEPA's regulatory categorical exclusion, 40 C.F.R. § 1508.4. The provisions under which the Forest Service may issue a statutory categorical exclusion does not include a requirement that the documentation include a cumulative effects analysis. Conservation Congress has not provided any sections of the applicable statute that provide otherwise.

In the absence of a clear requirement that the Forest Service consider cumulative impacts in statutory categorical exclusion analysis, the Court declines to require such consideration. The Court grants summary judgment in favor of the Forest Service and against Conservation Congress on Conservation Congress's sixth claim.

### 5. Seventh Claim: Joseph Creek Project's Consistency with the Forest Plan

Conservation Congress's seventh claim asserts that the Forest Service violated NEPA and the Forest Act because the decision memorandum for the Joseph Creek Project does not contain findings of consistency with the Forest Plan. Compl. at 18-20. Conservation Congress argues that the lack of express findings of consistency with the Forest Plan standards, see 36 C.F.R. § 220.6(f)(4), renders the Forest Service's determination arbitrary, capricious, or not in accordance with law. Def. Mem. Summ. J., ECF No. 23, p. 24-25.

///

Here, the Court does not apply the requirements for regulatory categorical exclusions, 36 C.F.R. § 220.6(f)(4), but rather those for statutory categorical exclusions, 16 U.S.C. § 6591b. Regulatory categorial exclusions from NEPA require that decision memoranda include "[f]indings required by other laws such as, but not limited to findings of consistency with the forest land and resource management plan as required by the National Forest Management Act; or a public interest determination." 36 C.F.R. § 220.6(f)(4). Statutory categorical exclusions under the Farm Bill Amendment do not contain a similar requirement. See 16 U.S.C. § 6591b. Projects "in which activities . . . would be inconsistent with the applicable land and resource management plan," however, are not covered by the statutory categorical exclusion. 16 U.S.C. § 6591b(d)(4).

Conservation Congress's arguments rely on the requirements for regulatory categorical exclusions. The organization has not argued that the Joseph Creek Project is excluded from statutory categorical exclusion under subsection 6591b(d)(4), and the Court will not rule upon arguments that were not raised. Indeed, even if that argument had been raised, the administrative record does not support a finding of inconsistency. See Joseph Creek R. at JC_000169-70, JC_000201-12, JC_000283-90, JC_000317-23, JC_000330—58, JC_000368-407, JC_000416-24, JC_000427-28.

///
///
///
///
///

The Court grants summary judgment in favor of the Forest Service and against Conservation Congress on Conservation Congress's seventh claim.

## III. ORDER

For the reasons set forth above, the Court DENIES Conservation Congress's Motion for Summary Judgment and GRANTS the Forest Service's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: June 4, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE